**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL KOUMJIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-3455 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MUDD LAW OFFICES P.C., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Michael Koumjian, an airline pilot, was harassed on the job for his ethnicity. When he complained about the mistreatment, the airline fired him. So he hired Charles Lee Mudd, Jr. for some legal advice.

Mudd didn't do much for the better part of two years. Months passed, without any activity. As time passed, the clock continued to tick on Koumjian's potential claims. In the end, too much time ticked off the clock. Mudd missed the statute of limitations for some claims, and he never filed a complaint. Then, after demanding more money, he quit.

Koumjian responded by suing Mudd and his firm for legal malpractice. And Mudd, of all things, now argues that Koumjian waited too long to sue him. The lawyer who botched the statute of limitations invokes the statute of limitations to dismiss a claim about botching the statute of limitations.

The statute of limitations is an affirmative defense, and the complaint does not plead itself out of court. For the reasons stated below, the motion to dismiss is denied.

## Background

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In early 2018, Plaintiff Michael Koumjian worked as a pilot for Express Jet Airlines. *See* Cplt., at ¶ 1 (Dckt. No. 1-1, at 4 of 18). He participated in a training program with the airline. *Id.* But during the training, he experienced ethnic discrimination and harassment by a fellow pilot. *Id.* at ¶ 5. After he complained about the harassment, Express Jet Airlines fired him. *Id.*

Koumjian looked for legal help, and he turned to Charles Lee Mudd, Jr., a local attorney. *Id.* at ¶ 6. He asked for advice about bringing a wrongful discharge claim in federal court. *Id.* At that point, the statute of limitations had not yet run. *Id.* at ¶ 7.

Mudd discouraged Koumjian from bringing a claim of wrongful discharge. *Id* at ¶ 8. He said that a defamation claim was a better way to go. *Id.* At that time, the statute of limitations had not yet run on a potential defamation claim. *Id.*

Koumjian decided to formally retain Mudd as his lawyer. On September 19, 2018, Koumjian signed a retainer agreement. *Id.* at ¶ 9; *see also* 9/19/18 Retention Letter (Dckt. No. 1-1, at 10–17 of 18). Koumjian paid Mudd $10,000. *See* Cplt., at ¶ 9 (Dckt. No. 1-1, at 6 of 18).

Months passed, without any progress. By April 2019, Mudd had done nothing. So much time passed that the statute of limitations for a defamation claim had run. *Id.* at ¶ 11. Mudd told Koumjian that tortious interference was a better cause of action. *Id.*

Mudd never fessed up to Koumjian that the statute of limitations for defamation had expired. *Id.* at ¶ 13. And he didn't tell Koumjian that he had failed to take any action, either. *Id.* Meanwhile, the deadline to file a charge of discrimination with the EEOC had passed, too. *Id.* So, Koumjian's options were dwindling.

Mudd pressed forward, ever so slightly, with his new theory of tortious interference. On May 7, 2019, Mudd sent Koumjian a "very rough draft of [a] Complaint" for tortious interference. *Id.* The facts used to form the cause of action were entirely different than the facts about the retaliatory discharge. *Id.* The draft complaint discussed what happened *after* Koumjian was fired. *Id.*

Then, nothing happened. For almost a year and a half, Mudd "did little or nothing except evidently, evaluate the claims." *Id.* at ¶ 12. In 2020, Mudd informed Koumjian that, if he could not pay more money, Mudd would withdraw as his counsel. *Id.* In April 2020, he withdrew. *Id.*

In June 2021, Koumjian filed a complaint at long last. But it wasn't against the airline. Koumjian sued Mudd and his law office (the Court will call them "Mudd," collectively) in state court for legal malpractice. *See* Cplt. (Dckt. No. 1-1, at 4 of 18). A week later, Mudd removed the case to federal court. *See* Notice of Removal (Dckt. No. 1, at 2–3 of 23).

Koumjian claims that Mudd breached the retainer agreement and violated the standard of care in a number of different ways. *See* Cplt., at ¶ 15 (Dckt. No. 1-1, at 7–8 of 18). The complaint includes nine examples. *Id.* Koumjian alleges that Mudd failed to investigate, gave him bad advice, missed the statute of limitations, and committed other acts of malpractice. *Id.* He alleges that Mudd should have filed a wrongful termination claim, and if Mudd had done so, Koumjian would have won at trial and received a verdict of $2 million. *Id.* at ¶¶ 17–18.

Mudd moved to dismiss the complaint. *See* Mtn. to Dismiss (Dckt. No. 10). Mudd argues that Koumjian waited too long to bring a claim that Mudd waited too long.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## Analysis

Koumjian alleges that Mudd committed legal malpractice by failing to file a discrimination claim and a defamation claim. Mudd moves to dismiss on two grounds.

First, Mudd argues that Koumjian waited too long to claim that Mudd waited too long. (Irony is no barrier to a motion to dismiss.) Second, Mudd argues that Koumjian cannot fault

him for failing to bring a tortious interference claim because (according to him) Illinois does not recognize such a claim.

## I.     The Timeliness of a Claim about Untimeliness

The first issue is the timeliness of the legal malpractice claim. The question is whether Koumjian waited too long to sue Mudd for waiting too long to sue the airline.

A statute of limitations is an affirmative defense, and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). But "the statute of limitations may be raised in a motion to dismiss 'if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

The Court must act cautiously before dismissing a complaint based on a statute of limitations. "[B]ecause affirmative defenses frequently 'turn on facts not before the court at [the pleading] stage,' dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense. In other words, the plaintiff 'must affirmatively plead himself out of court.'" *Hyson USA, Inc.*, 821 F.3d at 939 (citations omitted).

The first step is pinning down the statute of limitations for a legal malpractice claim. Under Illinois law, a claim of legal malpractice "must be commenced within 2 years from the time the person bringing the action *knew or reasonably should have known of the injury* for which damages are sought." *See* 735 ILCS 5/13-214.3(b) (emphasis added).[1] The plain text of

---

[1] Even if the injured party did not know or could not have reasonably known about the injury, the suit still "may not be commenced in any event more than 6 years after the date on which the act or omission occurred." *See* 735 ILCS 5/13-214.3(c). That is, the statute of limitations for a claim is two years, and the statute of repose is six years. Here, only the statute of limitations is at issue. So, the Court must decide whether Koumjian's complaint alleges that he knew or should have known about his injury two years before June 21, 2021, when he filed the malpractice suit in state court.

the statute confirms that an injury is not enough. The clock doesn't start ticking until the injured

party knows or should know that they have suffered an injury. An injury without knowledge of

the injury is not enough.

Illinois courts apply the discovery rule when deciding when a plaintiff knew or should

have known about an injury. "Under the prevailing 'discovery rule,' the two-year period does

not necessarily begin the day the plaintiff suffers his injury; 'rather, the period starts when the

plaintiff knows or should know facts that would cause him to believe that his injury was

wrongfully caused.'" *Preferred Personnel Servs., Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill.

App. 3d 933, 327 Ill Dec. 391, 902 N.E.2d 146, 152 (2009) (quoting *Romano v. Morrisroe*, 326

Ill. App. 3d 26, 259 Ill. Dec. 831, 759 N.E.2d 611, 613 (2001)).

"It is the realized injury to the client, not the attorney's misapplication of his legal

expertise, that marks the point for measuring compliance with a statute of limitations." *Romano*,

759 N.E.2d at 616. But "[t]he statute of limitations does not require that the injured party

acquire actual knowledge of negligent conduct before; rather, the statutory period will begin

once an injured party has a reasonable belief that the injury was caused by wrongful conduct

thereby creating an obligation to inquire further on that issue." *Brummell v. Grossman*, 2018 IL

App (1st) 162540, 422 Ill. Dec. 266, 103 N.E.3d 398, 409 (2018).

Koumjian's alleged injury is the loss of the ability to sue the airline because of the

running of the statute of limitations. He suffered an injury when the clock ran out. The issue is

when Koumjian knew or should have known of the injury.

Mudd argues that the clock should start ticking on the malpractice claim on the day when

the underlying claims became time barred. In effect, he contends that the injury, and knowledge

of the injury, are one and the same. As he sees is, when the clock stops on the underlying claims,

6

the clock starts to run on a legal malpractice claim. *See* Defs.' Mtn. to Dismiss, at 2 (Dckt. No. 10).

That rule would make sense if the Illinois statute started the clock when the injury takes place. But it doesn't. It starts the clock when the plaintiff *knows or should know* that he has suffered an injury. Mudd's argument would erase the knowledge requirement from the text of the statute.

Sometimes the date of the injury is the same as the date of knowledge of the injury. It's not hard to think of potential examples. Imagine if a lawyer took a case to trial. And imagine if the case went down in flames, right in front of the client, for all the world to see. The client could suffer an injury, and *know* that he suffered an injury, on the same day.

Oftentimes, the client knows or should know of an injury when he receives an adverse judgment from the court. *See Short v. Grayson*, 2021 WL 4034080, at *5 (N.D. Ill. 2021) ("In a malpractice claim, the clock often starts ticking when the court enters judgment against the client.") (collecting cases). A loss is a pretty good indicator that things didn't go so well. As soon as the client knows that they lost, they can start asking *why* they lost. And the statute of limitations gives them two years from that point to decide if the lawyer caused the injury.

But sometimes a client can suffer an injury without knowing about it. Again, it's not hard to think of examples. Maybe a court ruled against the client, but the attorney never passed along the ruling. Or maybe the lawyer failed to do something – say, issue trial subpoenas – that harmed the interests of the client. But the client might not know of the injury until later (say, when no witnesses show up at trial, and the judge throws out the case).

The case at hand is a good example. Koumjian alleges that Mudd committed malpractice by failing to bring a timely claim. The expiration of the statute of limitations is an injury

because the client lost the ability to bring a claim. But there is nothing inherently obvious about the lapse of a statute of limitations, especially for a layperson. It is not as if Mudd promptly fessed up and told Koumjian that he missed the deadline.

The statute of limitations is an affirmative defense, so this Court can dismiss a malpractice claim as untimely only if the complaint defeats itself. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."). But here, the complaint does not contain any allegations about when Koumjian knew or should have known that Mudd botched the statute of limitations. So it survives.

Mudd relies on two cases in his attempt to equate the existence of an injury and knowledge of an injury. *See McIntosh v. Cueto*, 323 Ill. App. 3d 384, 256 Ill. Dec. 760, 752 N.E.2d 640 (2001); *Brite Lights, Inc. v. Gooch*, 305 Ill. App. 3d 322, 238 Ill. Dec. 909, 713 N.E.2d 155 (1999). They do not help his cause.

In *McIntosh*, the Illinois appellate court considered the timeliness of a legal malpractice claim about the failure to file a medical malpractice claim. The appellate court decided that it "must figure the approximate date beyond which the medical malpractice case could no longer be filed, in order to determine the event that triggers the running of the legal malpractice period of limitations." *See McIntosh*, 752 N.E.2d at 646. The court held that the clock on the legal malpractice claim began to run when the clock on the medical malpractice claim ran out. That

is, the medical malpractice claim expired on February 3, 1992, and "that is the date upon which the legal malpractice statute of limitations began to run." *Id.*

There wasn't any analysis – just two conclusory sentences. And the holding was more than a little difficult to square with the text of the statute, which expressly requires knowledge of the injury. *See* 735 ILCS 5/13-214.3(b). The expiration of the underlying claim was not "the event that triggers the running of the legal malpractice period of limitations." *See McIntosh*, 752 N.E.2d at 646. An injury is necessary, but not sufficient. The clock did not start ticking on the legal malpractice claim unless and until the client knew or should have known that the lawyer botched something.

This Court is "not bound by decisions of Illinois's lower courts," but "must still give great weight to the holdings of the state's intermediate appellate courts." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (cleaned up). But this Court can go in a different direction "when there are persuasive indications that the highest court of the state would decide the case differently." *Id.* at 1087–88 (cleaned up). This Court's job is to predict what the Illinois Supreme Court would do.

This Court concludes that the Illinois Supreme Court would follow the text of the statute. Time and again, the Illinois Supreme Court has reaffirmed that the statute requires knowledge of an injury, not merely the existence of an injury. *See, e.g.*, *Snyder v. Heidelberger*, 2011 IL 111052, 352 Ill. Dec. 176, 953 N.E.2d 415, 418 (2011) ("The statute of limitations set forth in section 12-214.2(b) incorporates the 'discovery rule,' which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury."); *Morris v. Margulis*, 197 Ill. 2d 28, 257 Ill. Dec. 656, 754 N.E.2d 314, 318 (2001) ("Section 12-214(b) contains its own 'discovery' rule. Under the discovery rule, a limitations period begins to run

only when the plaintiff knows or reasonably should know of his injury . . . .") (cleaned up).  The discovery rule remains alive and well.

The other case does not help Mudd either.  In *Brite Lights*, lawyers failed to refile a complaint that was dismissed for want of prosecution within the one-year time limit, despite the plaintiff's requests.  *See Brite Lights, Inc.*, 713 N.E.2d at 156–57.  The appellate court ruled that the statute of limitations did not accrue "until the one-year refiling period had expired."  *Id.* at 158.  The reasoning was simple:  before the period passed, the "plaintiff's damages were uncertain, and therefore were speculative."  *Id.*

That case is not like the case at hand.  *Brite Lights* considered when a client suffered an injury.  The client didn't lose anything until he lost the ability to refile the complaint.  So, the clock couldn't start ticking on the malpractice claim until the end of the one-year period.  *Brite Lights* was about the timing of an injury.  It was not about the timing of knowledge of an injury.  It had nothing to do with whether the existence of an injury is the same as the knowledge of an injury.

The clock can't start ticking before there is an injury.  But that doesn't mean that the clock starts ticking *when* there's an injury.  In *Brite Lights*, there was no injury until the lawyers missed the deadline to refile the complaint.  When the one-year period ended, the client suffered an injury because the client lost the ability to pursue the claim.  But that injury did not necessarily start the clock running on a malpractice claim, because the statute also requires knowledge.

In sum, at the motion-to-dismiss stage, a defendant cannot prevail on an affirmative defense unless the complaint defeats itself.  Here, Koumjian did not allege facts showing that he

knew or should have known of the injury more than two years before suing Mudd. So the motion to dismiss is denied. Koumjian did not plead facts showing that he sued Mudd too late.[2]

## II.     Tortious Interference

The next issue is a bit mysterious. The complaint alleges that Mudd recommended that Koumjian file a tortious interference claim. *See* Cplt., at ¶ 13 (Dckt. No. 1-1, at 6–7 of 18). According to Mudd, the complaint fails because "'tortious interference' is not a cause of action." *See* Defs.' Mtn. to Dismiss, at 3 (Dckt. No. 10).

It is hard to know what to make of that argument. Illinois law recognizes a claim for tortious interference with contract, and tortious interference with prospective economic advantage. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 137 Ill. Dec. 19, 545 N.E.2d 672, 676 (1989) (laying out the elements for tortious interference with contract); *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 256 Ill. Dec. 289, 751 N.E.2d 1126, 1133 (2001) (laying out the elements for tortious interference with prospective business advantage). If there is no such thing as a tortious interference claim, one wonders why Mudd sent Koumjian a draft complaint with a tortious interference claim.

Maybe Mudd means that the complaint is too vague, because it does not differentiate between them. But fairly read, the complaint alleges that Mudd recommended a "tortious interference" claim. *See* Cplt., at ¶ 13 (Dckt. No. 1-1, at 6–7 of 18). Maybe the complaint wasn't vague at all – maybe *Mudd* was vague when he recommended that Koumjian file a

---

[2] Along the way, Koumjian makes a few statements about fraudulent concealment. It is not entirely clear whether Koumjian is offering fraudulent concealment as a theory of malpractice, or as a standalone claim, or as a response to an argument about the statute of limitations, or something else. The Court assumes that Koumjian was referring to Mudd's failure to disclose as a reason why Mudd committed malpractice. If Koumjian intended to bring a fraudulent concealment claim, separate and apart from the legal malpractice claim, then he must file an amended complaint.

"tortious interference" claim. Anyway, the gist of the complaint is that Mudd recommended a tortious interference claim of some variety.

Mudd argues that Koumjian can't sue him for failing to bring a tortious interference claim, because Koumjian himself admits that any such claim was a loser. The complaint alleges that there "really was no basis for a cause of action" for tortious interference. *Id.* So, as Mudd sees it, Koumjian can't sue him for failing to bring a claim, because the claim was a dud anyway.

That's not exactly what Koumjian is alleging. The complaint does not allege that Mudd committed malpractice by failing to file a tortious interference claim. Instead, the complaint alleges that Mudd committed malpractice by fixating on tortious interference when the facts didn't support it, and when other claims were more promising. Koumjian faults Mudd for focusing on bad claims (like tortious interference) when he should have focused on good claims (like wrongful termination).

Overall, the Court does not read the complaint to allege that Mudd should have filed a claim of tortious interference. So the motion to dismiss on that ground is denied.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.


Date:   February 4, 2022                              _____

                                                      Steven C. Seeger
                                                      United States District Judge